IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PAN ASIA SOLAR LIMITED,

    Plaintiff

SIERRA TRADING SERVICES, INC.

    Defendant.

C.A. No. 08-CV-00086GMS

NON-ARBITRATION

TRIAL BY JURY OF TWELVE

## ANSWER AND COUNTERCLAIM

Defendant, Sierra Trading Services, Inc., [Sierra] answers the Complaint as follows. To the extent that allegations in a paragraph are not deemed answered, they are denied.

1. Denied that there was a breach of a Procurement Services Agreement or that Plaintiff is entitled to any relief.

2. Sierra is without sufficient information or knowledge to form a belief as to the truth of the averments in this paragraph of the Complaint.

3. Admitted.

4. Denied as stated. Admitted that Sierra and Plaintiff (Pan Asia) entered into a Procurement Services Agreement [Exhibit 2] on or about September 6, 2007 and also entered into a Wafer Supply Contract which was an integral part of the Procurement Agreement with the Supplier Microsys International (S) PTE LTD. To the extent this paragraph characterizes the Agreement it is denied as not accurately setting forth all of the agreements including the Wafer Supply Contract as the Agreement speaks for itself.

5. To the extent this paragraph characterizes the Agreement it is denied and the Agreement speaks for itself. Further denied as not accurately setting forth the terms of the Agreements which included the Wafer Supply Contract. [Agreements]. The Wafer Supply Contract is attached to this Answer as Exhibit 1.

6. Admitted that Sierra fulfilled its obligations under the Agreements and was paid $125,000 by Pan Asia.

7. Denied that Microsys was not able to fulfill its obligations. Sierra is without sufficient information to admit or deny the allegations of this paragraph.

8. Sierra is without information sufficient to form a belief as to the truth of the allegations but, upon information and belief, it is denied that Microsys failed to fulfill its obligations or that Pan Asia is entitled to any relief. To the extent this paragraph seeks to interpret the terms of the parties' agreements or their legal effect the allegations are denied. For further answer, Pan Asia breached the Agreements by refusing to negotiate or arbitrate as provided for in the Agreements.

9. The allegations in this paragraph make legal arguments and state conclusions of law, to which no answer is required. To the extent that an answer is required, they are denied. Sierra provided a completed contract including the Wafer Supply Contract and Pan Asia breached the contract by not negotiating or arbitrating the alleged failure of Microsys.

10. Sierra repeats and realleges its responses to paragraphs 1 through 9 as if specifically set forth herein.

11. The allegations in this paragraph of the Complaint make legal arguments and state

conclusions of law, to which no answer is required. To the extent that an answer is required, they are denied. Further denied, in that the parties "contract" included and incorporated the Wafer Supply Contract which was executed by Pan Asia, Sierra and Microsys, Exhibit 1.

12. The allegations in this paragraph of the Complaint make legal arguments and state conclusions of law, to which no answer is required. To the extent that an answer is required, they are denied.

13. Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

14. Pan Asia has failed to state claims upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

15. Process is insufficient

### THIRD AFFIRMATIVE DEFENSE

16. Service of process is insufficient

### FOURTH AFFIRMATIVE DEFENSE

17. Pan Asia has failed to join a required or necessary party under Rule 19

### FIFTH AFFIRMATIVE DEFENSE

18. Pan Asia breached the Agreements.

### SIXTH AFFIRMATIVE DEFENSE

19. Pan Asia has unclean hands.

### SEVENTH AFFIRMATIVE DEFENSE

20. Pan Asia breached the covenant of good faith and fair dealing

### EIGHTH AFFIRMATIVE DEFENSE

21. Pan Asia has failed to mitigate its damages.

### NINTH AFFIRMATIVE DEFENSE

22. The complaint is barred by the Agreement for Binding Arbitration.

**WHEREFORE**, Defendant Sierra prays for an Order dismissing the Complaint with prejudice, compelling arbitration, and/or entering judgment in Sierra's favor on its affirmative defenses and Counterclaim and awarding Sierra compensatory, punitive damages, costs, attorneys' fees, and such other relief as this Court may deem proper and appropriate.

### COMPULSORY COUNTERCLAIM

### INTRODUCTION

1. This is a counterclaim by Defendant Sierra against Plaintiff, Pan Asia Solar Limited ("Pan Asia") for, *inter alia*, breach of contract and breach of the covenant of good faith and fair dealing. This claim is based upon the same transactions and occurrences as are in the initial complaint filed by Plaintiff.

2. Sierra Trading Services, Inc. ("Sierra") is a procurement agency incorporated in Delaware.

3. Pan Asia Solar Limited (Pan Asia) is a British Virgin Islands company and plaintiff in this action.

4. On or about the September 6, 2007 Sierra entered into a procurement contract with Pan Asia to locate and contract with a supplier for silicon wafers meeting the specification requirements of Pan Asia for a total purchase price of $125,000.

       [Procurement Services Contract] Exhibit 2.

5. On or about September 13, 2007 a supply contract for silicon wafers was entered into and executed by, the supplier of the silicon wafers (Microsys), the buyer (Pan Asia) and the contract agent (Sierra). Attached hereto as Exhibit 1. [Wafer Supply Contract]

6. The Procurement Services Contract and the Wafer Supply Contract are intertwined and dependent upon one another. The two contracts can not be read separately. Performance of the Wafer Supply Contract was integrally affected by and conditioned upon the Procurement Services Contract.

7. As a condition of the Procurement Services Contract Pan Asia agreed that Sierra would locate a supplier for the wafers and would make the formal introductions between the Pan Asia and the wafer supplier Microsys. It was agreed that there was to be no contact between Pan Asia and Microsys until after the formal introductions by Sierra.

8. Pan Asia breached the Procurement Services Contract by contacting Microsys without notice to or knowledge of Sierra; by attempting to negotiate a new contract with Microsys; by attempting to exclude Sierra so as to avoid paying its fee for work locating Microsys and introducing Microsys to Pan Asia.

9. Upon learning of Pan Asia's actions, Sierra immediately contacted Pan Asia and notified them that they were in breach of the Procurement Services Contract by contacting Microsys prior to formal introductions and final payment of Sierra's fees under the Procurement Services Contract.

10. The Procurement Services Contract was contingent upon a Wafer Supply Contract and both contracts constituted the integrated contractual arrangement between the parties.

11. Pan Asia contracted that any issues with Microsys with respect to the wafers would be resolved by arbitration in the U.S. Courts, including this Court.

12. There were alleged problems between Microsys and Pan Asia on whether satisfactory samples were able to be supplied under the Agreements.

13. Pan Asia and Microsys breached the Wafer Supply Contract and the Procurement Services Agreement by not permitting Sierra to be involved in resolving such problems and by not submitting those problems to arbitration.

14. Pan Asia's breach caused the alleged breach of the Wafer Supply Contract upon which its complaint is based.

15. Due to Pan Asia's breach they are not entitled to any refund of the fees of Sierra under the Procurement Services Contract.

## COUNT ONE

## BREACH OF CONTRACT

## FAILURE TO ARBITRATE

16. Sierra realleges the allegations in paragraphs 1 through 15 and reasserts them and incorporates them as if fully set forth herein.

17. Sierra and Pan Asia entered into a Procurement Services Contact which required Sierra to locate and negotiate with a silicon wafer supplier for Pan Asia.

18. Sierra fully performed when it located and contracted with Microsys to supply silicon wafers to Pan Asia.

19. The supply contract executed by Sierra, Pan Asia and Microsys required that any disputes that could not be resolved through negotiation be submitted to arbitration for

final resolution in this Court

20. Pan Asia breached the Wafer Supply Contract and Procurement Supply Contract when it failed to submit the issue of the sample silicon wafers to arbitration.

## COUNT TWO

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

21. Sierra realleges the allegations in paragraphs 1 through 20 and reasserts them and incorporates them as if fully set forth herein.

22. Pan Asia breached the covenant of good faith and fair dealing when it failed to adhere in good faith to the arbitration clause in the supply contract thereby failing to deal with Sierra fairly.

23. Pan Asia further breached the covenant of good faith and fair dealing when it entered into the contract with Sierra under the pre-text that it was looking for a supplier of silicon wafers, when it was looking for the opportunity to obtain a partner (Microsys) who already had a factory in China so that Pan Asia could partner directly with Microsys.

24. Pan Asia deceptively induced Sierra to enter into the Procurement Services Contract with them under the false pretense that they were looking for a silicon wafer supplier when in reality they were looking for a silent partner in China to purchase or co-partner with in buying factories in China.

25. Pan Asia intentionally misrepresented the facts of the contract and had no intentions of honoring the supply contract or the procurement contract.

intentions of honoring the supply contract or the procurement contract.

26. Pan Asia's bad faith and conduct prevented Sierra from receiving the full benefits of the procurement contract.

27. Pan Asia acted in bad faith and therefore has breached the implied covenant of good faith and fair dealing.

WHEREFORE, Sierra prays for the entry of judgment against Pan Asia for breach of the procurement contract and breach of the "Wafer Supply Contract" seeking an order stating:

1. The amount of the procurement contract does not need to be returned; and

2. Microsys is an indispensable party; and

3. The costs incurred in prosecuting this action, including reasonable attorney's fees; and

4. Such other and further relief, as the Court may deem just and proper.

**RICHARD R. WIER, JR., P.A.**

/s/ Richard R. Wier, Jr.
Richard R. Wier, Jr. (#716)
Michele D. Allen (#4359)
Two Mill Road, Suite 200
Wilmington, DE 19806
(302)888-3222
Rwier@wierlaw.com

# Exhibit 1

## Wafer Supply Contract
### BUYERS Code: PAS-STS-W100107
### SELLERS Code: MYS-STS-W100107

**The Buyer**: Pan Asia Solar Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, BVI

Tel: 1-646- 217-9925. Fax: 1-646- 217-9925: Contact Mr. Anton Szpitalak
email: Anton@PanAsiaSolar.com Website: www.PanAsiaSolar.com

**The Seller**: Microsys International (S) PTE LTD

Address: 10 Jalan Besar #05-01 SIMLIM Tower, Singapore 208787

Tel: (065) 63924171. Fax: (065) 63922520: Contact Gautham Vishwanath
email: sales@microsys.com Website: www.mycrosys.com

**Contract Agent**: Sierra Trading Services Inc.

**The Buyer and Seller herein sign a minimum two year agreement:**

### Commodity & Description:
1. Prime wafers: Type: P
2. Dimension: 125+/-0.5mm
3. Diagonal: 190+/-0.5mm
4. Thickness: 200+/-20μm
5. Resistivity: 0.5 ~ 3.0 ohm cm
6. Lifetime: >/= 10μs
7. Saw mark: <20μm
8. Dopant: Boron
9. Oxygen: $1*10^{18}$ atoms/cm$^3$
10. Carbon: $5*10^{16}$ atoms/cm$^3$
11. Square-side angles: 90°
12. Crystal orientation: Mono: 100±1.0°
13. TTV < 30μm

A.S, JW, GV

### Quantity
300,000. (Three hundred thousand) wafers per month delivered from October 2007 to December 2009.

### Price

The sample test quantity shall be between 32,000 wafers to 50,000 wafers, priced at $5.70 wafer. The regular contract quantities of 300,000 shall be priced at $5.60 / wafer with price reviews according to the market every 6 months.

**2. The specifications and technical requirement:** As stated above under the category item: Commodity and Description. Each shipment shall include, Wafer Certificate of Conformance as well as packing list, Invoice and other associated documents.

**3. Shipment:** Product is priced at FOB airport, Shanghai China.

**4. Packing:** Packing should be suitable for the long-distance safe transport of the solar wafers.

**5. Inspection and Discrepancy:** If the Buyer finds any defective wafers after the goods have arrived and have been inspected, a claim along with the defective goods should be sent to the sellers within 30 days of arrival to Buyer. After receipt of the defective wafers, the Seller must replace the defective wafers with the new wafers within 15 days to the Buyer. Transport cost of replacing defective wafers is on Seller.

**6. Payment terms:** For each monthly supply the Seller will send a dated and signed Invoice to the Buyer and also to the Contract Agent by email. The Buyer then has 5 business days to make payment to the Seller for the invoice amount by wire transfer. The Seller then has up to 30 days lead time for the production. The Seller shall then notify the Buyer at the end of the production cycle that the wafers are ready to be pickup up. <u>It is recommended, but not mandatory that the Buyer keep one months deposit amount with the seller so as to prevent any delay in payment for continued production.</u>

**7. Validity:** The contract is valid from date of signing from September 2007 through October 2009. The contract may be extended by mutual agreement of all concerned parties.

**8. Breach of contract:** (1) As this is a production contract if there is a delayed payment from the Buyer beyond 7 working days, the buyers shall pay a penalty of 1% of the total monthly delivery value. (2) In case there is a delay in delivery from the Seller beyond 7 working days after the 30 day production period, the sellers shall pay the penalty of 1% of that month's delivery value. (We need to review this clause after the 32000 sample Wafer delivery as sometimes the delivery depends on the loading of manufacturing house and need to take all factors into consideration)

**9. All disputes arising in the performance of this contract shall be settled by the friendly negotiation of each side; In case no settlement can be reached, the disputes shall be submitted for Arbitration in the United States Of America. Both parties agree to fully cooperate and accept the decision of the Arbitration Court as final.**

**10. Others:** This contract is in triplicate and comes into force only after it is signed or sealed by all three parties concerned. Each party shall keep a copy. A photocopy of the contract can be considered as valid.

A.S
J.W.
Gv

**With full agreement both Parties have initialed each of the 3 pages of the agreement. They further affixed their signatures below:**

Date September 07, 2007

BUYER: Pan Asia Solar Limited

_____/Anton Szpitalak – Director
(Signature)    Print Name and title

A.S

SELLER: Microsys International(S) PTE LTD:

_____/Goutham Viswanadam – Managing Director
(Signature)    Print Name and title

GV

Contract Agent: Sierra Trading Services Inc.

John Ward          John Ward – Director
Signature          Print Name and title

J.W.

September 13, 2007

Pan Asia Solar
261 Bowery, 3rd Floor
New York, NY, United States of America

<u>**P.O. #MS001**</u>

<u>**Sample Test Quantity of 32,500 wafers**</u>

<u>**Referring to in September 7th signed "Wafer Supply Contract"**</u>

**<u>The Buyer</u>:**

Pan Asia Solar Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, BVI

Tel: 1-646- 217-9925. email: Anton@PanAsiaSolar.com Website: www.PanAsiaSolar.com

**<u>The Seller</u>:**

Microsys International (S) PTE LTD

Address: 10 Jalan Besar #05-01 SIMLIM Tower, Singapore 208787

Tel: (065) 63924171. Fax: (065) 63922520: email: sales@microsys.com Website: www.mycrosys.com

<u>**Commodity**</u>:
1. Prime wafers: Type: P
2. Dimension:125+/-0.5mm
3. Diagonal:150+/-0.5mm
4. Thickness:200+/-20μm
5. Resistivity:0.5 ~ 3.0 ohm cm
6. Lifetime: >/= 10μs
7. Saw mark:<20μm
8. Dopant: Boron
9. Oxygen:$1*10^{18}$atoms/cm$^3$
10. Carbon: $5*10^{16}$atoms/cm$^3$
11. Square-side angles: 90°
12. Crystal orientation: Mono: 100±1.0°
13. TTV < 30μm

**Quantity, Quality and Price**

The sample test wafer quantity shall be between 32,500 wafers, priced at $5.70 wafer. The Maximum rejection rate for the prime wafers is 1%. For rejection rate > 1% the Inspection and Discrepancy clause as stated in the September 7th "Wafer Supply Contract" shall apply. Wafers are priced FOB Shanghai Airport China.

**Documentation:** Each shipment shall include, Wafer Certificate of Conformance, packing list, Invoice and other associated documents.

**Packing:** Packing should be suitable for the long-distance and safe transport of the solar wafers.

**Inspection and Discrepancy:** If the Buyer finds any defective wafers after the goods have arrived and have been inspected, a claim along with the defective goods should be sent to the sellers within 30 days of arrival to Buyer. After receipt of the defective wafers, the Seller must replace the defective wafers with the new wafers within 15 days to the Buyer. Transport cost of replacing defective wafers is on Seller.

**Payment terms and delivery:** Upon receipt of the signed and dated Seller's Invoice the Buyer 5 business days to make payment to the Seller for the invoice amount by wire transfer. The Seller then has up to 30 days lead time for the production. The Seller shall then notify the Buyer at the end of the production cycle that the wafers are ready for airport booking and shall forward to the buyer the complete wafer document set and airline schedule. For the trial shipment the Buyer and Seller shall work together and coordinate the safe and timely delivery.

**Lateness:** If there is to be any lateness on the part of the buyer to pay for the wafers they must notify the Seller within 7 business days. If there is to be any lateness on the part of the Seller to have wafers ready for the FOB delivery on time, they must notify the Buyer within 7 business days of delivery.

**Disputes:** Any disputes arising in the performance of the agreement shall be settled by the friendly negotiation of each side; in case no settlement can be reached, the disputes shall be submitted for Arbitration in the United States Of America. Both parties agree to fully cooperate and accept the decision of the Arbitration Court as final.

Date September 13, 2007

Signed by Buyer:

_____
Anton ___alak
Director
Pan Asia Solar Limited

# Exhibit 2

THIS PROCUREMENT SERVICES AGREEMENT (this "Agreement") is made the 6th day of September, 2007

BETWEEN:

Pan Asia Solar Limited, a company duly incorporated under the law of the British Virgin Islands with registered address at P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands (the "Customer");

And

Sierra Trading Services Inc, a company duly incorporated under the laws of the United States of America with registered address at Naaman's Building 206, 3501 Silverside Road, Wilmington Delaware (the "Procurement Agency").

NOW IT IS HEREBY AGREED as follows:

1. **PROCUREMENT**

1.1 The Procurement Agency agrees to provide, and the Customer agrees to purchase, a completed contract adhering to the specifications listed in Appendix 1 of this Agreement (the "Wafers") subject to the terms and conditions of this Agreement.

1.2 The terms and conditions of this Agreement shall apply to the total exclusion of any other terms and conditions.

2. **PRICES**

2.1 The Customer shall pay to the Procurement Agency a total price (the "Total Purchase Price") of $125,000 for the service of providing the completed sales contract of the Wafers.

2.2 The Total Purchase Price shall include:

   (a) The completed sales contract, agreed upon and signed by both the supplier of the silicon wafers and the Customer

   (b) Introduction to the supplier of the silicon wafers

3. **PAYMENT AND PAYMENT TERMS**

3.1 All the payments under this Agreement shall be made in US currency by the Customer to the Procurement Agency's designated bank account in accordance with this Article.

3.2 <u>Retainer upon Execution</u>. Within [3] Business Days upon the execution this Agreement, the Buyer shall pay to the Seller by wire transfer 30% of the Total Purchase Price, which is equal to US$ 37,500 to be used as a retainer against services performed by Procurement Agency.

3.3 <u>Payment upon Contract Delivery</u>. Customer agrees to pay the remaining 70% balance which is equal to $87,500.00 within 3 business days to Procurement Agency following the physical delivery by fax or email of the agreed upon supply contract signed by the supplier of the wafers. Both Customer and the supplier of the wafers must agree upon terms before the contract is deemed delivered. The Draft contract which has been sent by Procurement Agency is considered agreed upon. The final signed contract by the wafer Supplier shall also be considered acceptable if containing the same verbiage as the previously agreed upon draft. Additions to be included are wafer origin and location for any arbitration.

3.4 The bank account designated by the Procurement Agency is as follows:

Bank Name: M&T Bank
Bank Address: One M&T Plaza Buffalo New York
Beneficiary: Sierra Trading Services, Inc

A.S, JW

3.5 Any change in the bank and/or account number of the Procurement Agency shall be notified in writing to the Customer by the Procurement Agency 15 days prior to the Buyer's payment pursuant to this Agreement.

3.6 If the Customer fails to make any payment on or before the due date, without prejudice to any other right or remedy available to the Procurement Agency, the Procurement Agency shall be entitled to:

(a) Terminate this Agreement;

(b) Sell the contract to another party

HONGKONG/15597.3

2

3.7   If the Procurement Agency fails to make the introduction to the supplier of the Wafers or provide to the Customer the completed agreement on or before the due date, without prejudice to any other right or remedy available to the Customer, the Customer shall be entitled to:

  (a)   Terminate this Agreement;

  (b)   Receive full refund of the Retainer as indicated by clause 3.2 of this agreement

3.8   Pursuant to the Draft and Final signed contract between Supplier and Customer, should the test wafers provided to Customer from Supplier not meet the technical specifications outlined in the or if are found unsuitable for processing by Customer, without prejudice to any other right or remedy available to the Customer, the Customer shall be entitled to:

  (a)   Terminate this Agreement and cancel/terminate the wafer supply contract that was supplied by the Procurement Agency.

  (b)   Receive full refund of the Retainer from Procurement Agency as indicated by clause 3.2 of this agreement within 3 business days of such finding

  (c)   Receive full refund of the remaining portion of the fee from Procurement Agency as indicated by clause 3.3 of this agreement within 3 business days of such finding

A.S., JW

4.   **APPLICABLE LAW**

4.1   This Agreement shall be governed by and construed in all respects in accordance with the laws of the United States of America and the parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the courts of the United States of America.

HONGKONG/15397.3

3

AS WITNESS the hands of authorised representatives of the Procurement Agent and Customer the day and year first above written.

SIGNED by Anton Szpitalak, Director of and for and on behalf of Pan Asia Solar Ltd

_____  Anton Szpitalak

SIGNED by John Ward, Director of and for and on behalf of Sierra Trading Services Inc

_____  John Ward

A.S., JW

HONGKONG/15973 1

4

APPENDIX 1 -

## TECHNICAL SPECIFICATIONS OF CONTRACT

**Commodity & Description:**
1. Prime wafers: Type: P
2. Dimension: 125+/-0.5mm
3. Diagonal: 150+/-0.5mm
4. Thickness: 200+/-20μm
5. Resistivity: 0.5 ~ 3.0 ohm cm
6. Lifetime: >/= 10μs
7. Saw mark: <20μm
8. Dopant: Boron
9. Oxygen: $1*10^{18}$ atoms/cm$^3$
10. Carbon: $5*10^{16}$ atoms/cm$^3$
11. Square-side angles: 90°
12. Crystal Orientation: Mono: 100±1.0°
13. TTV < 30μm

A.S , JW

**Quantity**

300,000. (three hundred thousand) wafers per month delivered from October 2007 to December 2009.

**Price**

The sample test quantity shall be between 32,000 to 50,000 wafers priced at $5.70 wafer. The regular contract quantities of 300,000 shall be priced at $5.60 / wafer with price reviews according to the market every 6 months.

HONGKONG/155973